1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOSEPH A. SHERMAN,

11          Plaintiff,              No. CIV S- 11-0820 JAM GGH PS

12      vs.

13   CITY OF DAVIS,                 ORDER AND

14          Defendant.              FINDINGS AND RECOMMENDATIONS

15   _____/

16          Plaintiff is proceeding in this action pro se and in forma pauperis pursuant to 28

17   U.S.C. § 1915.  This proceeding was referred to this court by Local Rule 302(21), pursuant to 28

18   U.S.C. § 636(b)(1).

19          Presently before the court is defendant's motion to dismiss, filed September 12,

20   2011, and defendant's motion to declare plaintiff a vexatious litigant and impose pre-filing

21   requirements, filed November 10, 2011.  By order of November 9, 2011, this court construed

22   plaintiff's September 27, 2011 filing, entitled "motion for summary judgment," to the extent

23   possible, as an opposition to the motion to dismiss.  Plaintiff did not file an opposition to the

24   \\\\\

25   \\\\\

26   \\\\\

1 motion seeking to declare him vexatious.  Having reviewed the filings, the court now issues the

2 following findings and recommendations.[1]

3 BACKGROUND

4           Joseph Sherman filed this action on March 25, 2011, alleging various incidents of

5 police harassment in the City of Davis from 1999 through November, 2010.  Many of the claims

6 are time barred, but the timely claims mostly pertain to his alleged attempts to express his First

7 Amendment rights to free speech in public and private locations in Davis, and police efforts to

8 arrest him based on citizens' complaints.  His speech is alleged to have been in the form of

9 proselytizing and obtaining signatures for ballot petitions.  After plaintiff was told to leave an

10 area, such as a park, retail store or city sidewalk, by private individuals, police would arrive and

11 tell him to leave.  He alleges they threatened him with arrest and sometimes unjustly seized and

12 arrested him, in violation of his First Amendment rights, and violated his equal protection rights

13 by discriminating against him based on his religion and low income.  The complaint seeks

14 damages.

15 DISCUSSION

16     I. Request for Judicial Notice

17           Defendant requests that the court take notice of the following documents:

18 plaintiff's complaint in a prior lawsuit against the City, case number Civ.S. 04-2320 LKK EFB

19 PS (Ex. A to Sanders Decl.); the magistrate judge's findings and recommendations on summary

20 judgment in the City's favor in that case, (Id.,Ex. B); Judge Karlton's order in that case, adopting

21 the findings and recommendations (Id., Ex. C); the bench warrant issued by the Yolo County

22 Superior Court Judge Beronio in Yolo county Superior Court case number CR-M-09-0004111

23 (Id., Ex. D); plaintiff's petition for writ of habeas corpus, filed June 7, 2011, case number Civ.S.

24 11-1537 CKD (Id., Ex. E); and the docket showing the status of that writ (Id.,Ex. F).

25 _____

26           [1]  Hearing on the motions was vacated by orders of November 15, 2011, and December 6, 2011, the court having determined that oral argument was unnecessary.

1    A court may take judicial notice of court records.  See MGIC Indem. Co. v.

2    Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th

3    Cir. 1980).  All requests for judicial notice are granted pursuant to Fed. R. Evid. 201, as they do

4    not require the acceptance of facts "subject to reasonable dispute" and are capable of immediate

5    and accurate determination by resort to a source whose accuracy cannot be reasonably

6    questioned.  See In re Tyrone F. Conner Corp., Inc., 140 B.R. 771, 781-82 (E.D. Cal. 1992); Fed.

7    R. Evid. 201(b); Cal. ex. rel. RoNo, L.L.C. v. Altus Fin. S.A., 344 F.3d 920, 931 n. 8 (9th Cir.

8    2003).  The requests for judicial notice are pertinent insofar as the documents indicate that a

9    motion was filed or a certain result obtained in a court order/warrant.

10    II. Motion to Dismiss

11        A. Legal Standard For Motion to Dismiss

12        In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),

13    a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"

14    it must contain factual allegations sufficient to "raise a right to relief above the speculative

15    level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).  "The

16    pleading must contain something more...than...a statement of facts that merely creates a suspicion

17    [of] a legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal Practice

18    and Procedure § 1216, pp. 235-236 (3d ed. 2004).  "[A] complaint must contain sufficient factual

19    matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

20    556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).

21    "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

22    draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

23        In considering a motion to dismiss, the court must accept as true the allegations of

24    the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.

25    Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the

26    motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421,

3

89 S. Ct. 1843, 1849, <u>reh'g</u> <u>denied</u>, 396 U.S. 869, 90 S. Ct. 35 (1969).  The court will "'presume

that general allegations embrace those specific facts that are necessary to support the claim.'"

<u>National Organization for Women, Inc. v. Scheidler</u>, 510 U.S. 249, 256, 114 S.Ct. 798, 803

(1994), <u>quoting</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992).

Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

<u>Haines v. Kerner</u>, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

The court may consider facts established by exhibits attached to the complaint.

<u>Durning v. First Boston Corp.</u>, 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also

consider facts which may be judicially noticed, <u>Mullis v. United States Bankruptcy Ct.</u>, 828 F.2d

1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other

papers filed with the court, <u>Mack v. South Bay Beer Distributors</u>, 798 F.2d 1279, 1282 (9th Cir.

1986.  The court need not accept legal conclusions "cast in the form of factual allegations."

<u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an

opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  <u>See</u>

<u>Noll v. Carlson</u>, 809 F. 2d 1446, 1448 (9th Cir. 1987).

B.  <u>Analysis</u>

Defendant brings the instant motion for failure to state a claim based on 92 claims

that are barred by the statute of limitations, and because the remaining 14 claims are either barred

by <u>Heck v. Humphrey</u> or fail to state a claim.

1.  <u>Claims 15 Through 106 are Time Barred</u>

Defendant argues that all of the pertinent events concerning claims 15 through

105 occurred more than two years before plaintiff filed his complaint, and therefore they are time

barred.

For civil rights actions under 42 U.S. C. § 1983, federal courts apply the statute of

limitations of the state in which the claim arises.  <u>See</u> <u>Donoghue v. County of Orange</u>, 848 F.2d

4

926, 929 (9th Cir. 1987).  State law also determines the application of tolling doctrines.  See

Hardin v. Straub, 490 U.S. 536, 543-44 (1989) (relevant state tolling statutes apply to prisoners'

civil rights suits); Johnson v. Railway Express CVMB, 421 U.S. 454, 464-65 (1975) (state tolling

provisions apply unless an important federal policy will be undermined by their application).

        Section 1983 actions are characterized as personal injury actions for purposes of

identifying the applicable statute of limitations.  See Wilson v. Garcia. 471 U.S. 261, 268-71, 276

(1985); Bianchi v. Bellingham Police Dep't., 909 F.2d 1316, 1317 (9th Cir. 1990).  In California,

the applicable statute of limitations is California Code of Civil Procedure § 335.1, which

provides for a limitations period of two years from the date the cause of action accrues.  See

Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004).  At the time of some of the alleged injuries,

the limitations period was one year for personal injury actions.  See former Cal. Code Civ. Proc.

§ 340(3).

        While normally the burden of proving that the statute of limitations has expired

falls on the defendant, see Bradford-White Corp. v. Ernst & Whinney, 872 F.2d 1153, 1161 (3d

Cir. 1989), when the statute of limitations defense shows on the face of the complaint, the burden

of alleging facts which would extend the statute falls upon the plaintiff.  Conerly v.

Westinghouse Elec. Corp., 623 F.2d 117, 120 (9th Cir.1980); Rutledge v. Boston Woven Hose &

Rubber Co., 576 F.2d 248, 249 (9th Cir.1978).  "[I]f the plaintiff . . . pleads facts and the facts

show that he is entitled to no relief, the complaint should be dismissed.  There would be no point

in allowing such a lawsuit to go any further; its doom is foretold."  American Nurses' Ass'n v.

Illinois, 783 F.2d 716, 727 (7th Cir.1986).  See Tregenza v. Great Am. Communications Co., 12

F.3d 717, 718 (7th Cir.1993) (where affirmative defense of statute of limitations follows

inevitably from facts pleaded in complaint, Rule 12(b)(6) dismissal may be proper), cert. denied,

511 U.S. 1085, 114 S. Ct. 1837, 128 L.Ed.2d 465 (1994); Thomas v. Farley, 31 F.3d 557,

558-559 (7th Cir. 1994) (plaintiff choosing "to plead particulars, and they show he has no claim,

then he is out of luck – he has pleaded himself out of court.")

1          Plaintiff concedes that the acts complained of in counts 15 through 106 fall

2     outside the statute of limitations; however, he contends that they are viable claims based on the

3     "continuing violation doctrine," and that they "additionally are included as evidence." (Compl.,

4     ¶ 22.)  In his opposition, plaintiff attempts to characterize these claims as employment related

5     issues so that the continuing violation theory will apply.  (MSJ at 23.)

6          Defendant argues that the claims pertain to discrete acts that are actionable on

7     their own and therefore the continuing violation theory does not apply.  Defendant cites

8     Thompson v. City of Shasta Lake, 314 F. Supp.2d 1017, 1026 (E.D. Cal. 2004), for the

9     proposition that the continuing violation theory does not apply where plaintiff alleges he has been

10    subjected to a pattern of harassing conduct by a municipality.  Defendant further argues that four

11    of the alleged incidents were already alleged in a prior complaint, filed in 2004, and they were

12    dismissed by Judge Brennan based on the statute of limitations.  (Ex. B to Sanders Decl.)

13         Contrary to plaintiff's assertions, the "continuing violation theory" cannot save

14    those claims from the statute of limitations.  "Discrete discriminatory acts are not actionable if

15    time barred, even when they are related to acts alleged in timely filed charges."  Carpinteria

16    Valley Farms, Ltd. v. County of Santa Barbara, 344 F.3d 822, 828 (9th Cir.2003) (quoting Nat'l

17    R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)).

18    The court in Carpinteria declined to apply the "continuing violation theory" to a 42 U.S.C. §

19    1983 action in which a number of discrete violations were alleged, explaining that the

20    time-barred acts could not be used to support plaintiff's claims of constitutional violations, but

21    that such acts could serve as evidence to "establish motive and put his timely-filed claims in

22    context." Id. at 829.  Here, the acts alleged in Claims 15 through 106 are discrete and

23    time-barred.  As such, they may not be included as actionable claims in this action.  The

24    "continuing violation" doctrine does not apply in this case.

25    \\\\\

26    \\\\\

2. <u>Heck</u> Bar

Defendant next argues that Claims 8 through 11 are <u>Heck</u> barred.  In <u>Heck v.</u> <u>Humphrey</u>, 512 U.S. 477, 114 S. Ct. 2364 (1994), an Indiana state prisoner brought a civil rights action under § 1983 for damages.  Claiming that state and county officials violated his constitutional rights, he sought damages for improprieties in the investigation leading to his arrest, for the destruction of evidence, and for conduct during his trial ("illegal and unlawful voice identification procedure").  Convicted on voluntary manslaughter charges, and serving a fifteen year term, plaintiff did not seek injunctive relief or release from custody.  The United States Supreme Court affirmed the Court of Appeal's dismissal of the complaint and held that:

> [i]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under 1983.

<u>Heck</u>, 512 U.S. at 486, 114 S. Ct. at 2372.  The Court expressly held that a cause of action for damages under § 1983 concerning a criminal conviction or sentence cannot exist unless the conviction or sentence has been invalidated, expunged or reversed.  <u>Id.</u>

Claims 8 through 11 are that Davis police officers "unjustly seized" plaintiff on two separate occasions, November 13, 2009 and January 12, 2010, "pursuant to a warrant that was known to the community to be void & concocted from false accusation, contrived conviction, & community-wide conspiracy."  (Compl. ¶¶ 16-19.)  Plaintiff alleges that these warrants were "concocted to enforce sentence of unconstitutional & conspiratorial conviction from trial of cs. 09-4111...."  (<u>Id.</u> at ¶¶ 16, 18.)  Defendant argues that plaintiff's claims regarding the November 13, 2009 and January 12, 2010 arrests are based on a conviction dated October 23, 2009.  Defendant refers case number Civ.S.11-1537.  (RJN Ex. E.)  This conviction, for which

1  plaintiff currently has a habeas petition pending in this court, has not been overturned.  This

2  habeas petition seeks to overturn the same conviction referred to in the instant complaint, "cs.

3  09-4111."  (Id. at 7.)

4          As pointed out by defendant, events following a conviction which necessarily

5  question the conviction are also Heck barred.  See Czapla v. Reed, 2011 WL 675761 (W.D.

6  Wash. Jan. 19, 2011) (holding civil rights action contesting constitutionality of conditions of

7  plaintiff's community custody, the violation of which led to his arrest and confinement for

8  violating them is Heck barred); Knox v. Oregon, 412 Fed. Appx. 950 (9th Cir. Jan. 10, 2011)

9  (finding section 1983 action to challenge decision to defer parole release date is barred under

10  Heck).

11         Because plaintiff is alleging that the warrants executed on the dates at issue are

12  based on an attempt to enforce a sentence from his 2009 conviction, and that conviction has not

13  been overturned, these claims are Heck-barred.

14                    3. Claims One through Seven, Twelve and Thirteen[2]

15         Defendant next argues that plaintiff has failed to plead facts regarding the "threats

16  of arrest" necessary to state a claim under the Fourth or First Amendments in regard to Claims

17  one through seven, twelve, and thirteen.  These claims concern plaintiff's allegations that he was

18  exercising his First Amendment rights in various locations in Davis when police threatened to

19  arrest him.  (Compl. ¶¶ 9-16, 21.)

20         Verbal harassment alone is insufficient to state a claim.  See Oltarzewski v.

21  Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).  However, even threats of bodily injury are

22  insufficient to state a claim, because a mere naked threat is not the equivalent of doing the act

23  itself.  See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

24

25         [2]  Defendant argues the same grounds for dismissal of Claim 8; however, that claim is
   Heck barred and will not be further addressed.  Defendant does not refer to Claim 12 in this

26  section; however, it contains allegations of "threats of seizure" as well as  First Amendment
   violations, and therefore will be included in this discussion.

Defendants correctly contend that plaintiff has not alleged that he was unreasonably seized or searched in regard to these incidents.  Furthermore, the allegations indicate there was probable cause to arrest him at these times.  For example, one incident involved plaintiff's petitioning for ballot measures in front of a Target store.  Plaintiff concedes that officers threatened to handcuff him if he did not leave, based on complaints by two Target managers who requested that he be prevented from petitioning outside the store.  (Compl. ¶¶ 14, 15.)  The store managers' complaints in this case supplied the probable cause.  Therefore, allegations of Fourth Amendment violations contained in Claims 1 through 7, 12 and 13, should be dismissed without leave to amend.

Defendant's second argument is less persuasive.  The City contends that plaintiff has failed to plead facts of a claim under the First Amendment because he did not plead that he was threatened with arrest because of his speech.  Rather, defendant asserts that officers threatened to arrest plaintiff based on the store managers' complaints that plaintiff was trespassing on private property.  Although the complaint in this regard is conclusory, it directly refutes defendant's argument.  It specifically states: "the threat was simply based on 2 Target managers requesting that officers prevent Sherman from continuing to engage in free speech activities in front of the store."  (Compl. ¶ 14.)  There is no mention of trespassing as the reason for the complaints.  As defendant suggests, First Amendment rights can be chilled by the threat of arrest.  See City of Houston, Texas v. Hill, 482 U.S. 451, 459 n. 7 (1987).  First Amendment rights of free speech and assembly cannot be abridged merely because of public intolerance or animosity.  Cordova v. City of Reno, 920 F.Supp. 135, 139 (D. Nev. 1996) (citing Coates v. City of Cincinnati, 402 U.S. 611, 615, 91 S.Ct. 1686, 1689 (1971)).  The First and Fourteenth Amendments dictate that public speech may not be criminalized to protect the public from annoyance.  Id.  Nevertheless, there is no First Amendment right to gather signatures for initiatives or petitions, or to register voters on a shopping center's private property.  Hudgens v. NLRB, 424 U.S. 507, 518, 96 S.Ct. 1029 (1976); Lloyd Corp. v. Tanner, 407 U.S. 551, 570, 92

9

1  S.Ct. 2219 (1972).  Plaintiff has another forum in which to collect signatures, including public

2  streets and sidewalks, public parks and public buildings.  Strahan v. Frazier, 156 F.Supp.2d 80,

3  92 (D. Mass. 2001).[3]

4      Claims 3, 4, 6, 7, 12 and 13, concern free speech allegations at Safeway, Target,

5  and Dollar Tree.  There are not enough facts in the complaint to determine if the above law

6  applies to these allegations.

7      Unlike the aforementioned claims for which there might be reasonable restrictions

8  on First Amendment rights, Claims 1, 2, and 5 allege violations at a park and a plaza, potentially

9  traditional public forums, for which the restrictions on speech may be different.  See Pleasant

10  Grove City, Utah v. Summum, 555 U.S. 460, 469, 129 S.Ct. 1125, 1132 (2009).  Claims 1 and 2

11  concern an incident at Playfields Park in Davis where plaintiff alleges that he was practicing

12  juggling near a soccer field when police approached after being called by someone in the soccer

13  group and threatened him with seizure if he went near the group of youths.  (Compl. ¶¶ 9, 10.)

14  Claim 1 alleges violation of plaintiff's First Amendment right of freedom of speech and

15  assembly.  Claim 2 alleges equal protection violations.  Claim 5 asserts that plaintiff was

16  threatened with "imminent seizure" by Davis Police due to complaints by shop owners, for

17  publicly speaking in E Street Plaza in downtown Davis, in violation of his First Amendment

18  rights.

19      Because plaintiff's claims are too conclusory in regard to all of these claims, and

20  because there are not sufficient facts in which to determine applicability of reasonable time, place

21  and manner restrictions on plaintiff's speech, defendant's motion in regard to Claims 1 through

22  7, 12 and 13 should be granted with leave to amend, but only for claims that threats of arrest

23  violated plaintiff's First Amendment rights.  The portion of these claims which allege Fourth

24  Amendment violations based on threats of arrest should be dismissed without leave to amend.

25  _____

26      [3] Under California law, shopping centers and the like may be considered public forums.  See United Brotherhood, etc. v. NLRB, 540 F.3d 957, 963 (9th Cir. 2008).

4.  <u>Equal Protection Claims (Claims One through Fourteen)</u>

Claims 8 through 11 already have been found to be <u>Heck</u> barred, and Claims 1, 3, 5, and 6 contain no Equal Protection allegations.  Therefore, only Claims 2, 4, 7, 12,13, and 14 will be addressed in this section.

Plaintiff has alleged that he was denied equal protection when Davis Police Officers threatened him with arrest and arbitrarily interfered with his First Amendment rights, based on their discrimination against him.  (Compl. ¶¶ 10, 15, 21.)  He does not state the basis for the discrimination, except in an introductory paragraph, wherein he alleges that defendant's motive was based on his religion and "low income discrimination."  (<u>Id.</u> at ¶ 7.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  <u>City of Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 440-41,105 S.Ct. 3249, 3254-55 (1985), quoting <u>Plyler v. Doe</u>, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982).

> The guarantee of equal protection is not a source of substantive rights or liberties, but rather "a right to be free from discrimination in statutory classifications and other governmental activity." <u>Williams v. Vidmar</u>, 367 F.Supp.2d 1265, 1270 (N.D.Cal. 2005). "[D]iscrimination cannot exist in a vacuum; it can only be found in the unequal treatment of people in similar circumstances." <u>Freeman v. City of Santa Ana</u>, 68 F.3d 1180, 1187 (9th Cir.1995).

<u>California Parents for Equalization of Educational Materials v. Noonan</u>, 600 F.Supp.2d 1088, 1110-1111 (E.D. Cal. 2009).

"To state a § 1983 claim for violation of the Equal Protection Clause, a plaintiff must show that he was treated in a manner inconsistent with others similarly situated, and that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  <u>Thornton v. City of St. Helens</u>, 425 F.3d 1158, 1166-67 (9th Cir. 2005).

\\\\\

1    Income level is not a suspect class.  See San Antonio Independent School District

2  v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278 (1973); Lipscomb By and Through DeFehr v. Simmons,

3  962 F.2d 1374, 1378 (9th Cir. 1992).  Poverty or financial need does not qualify someone to be a

4  member of a protected class.  Harris v. McRae, 448 U.S. 297, 323 (1980).

5    In regard to any claim of discrimination based on religion, plaintiff has provided

6  no facts whatsoever in support of this claim.  He has not stated his religious affiliation or that the

7  officers were aware of his religion.  Plaintiff does not ascribe any discriminatory statements to

8  the officers involved which were based on plaintiff's religion.  He fails to allege facts

9  demonstrating differential treatment of others similarly situated on account of membership in the

10  same protected class.  Plaintiff has not alleged, for example, that he was specifically targeted due

11  to his religion while people of other religions were not harassed.  Therefore, plaintiff's equal

12  protection claims numbered 2, 4, 7, 12,13, and 14 must be dismissed with leave to amend.

13    5.  Conspiracy Claims

14    Plaintiff has peppered Claims 1 through 14 with allegations of conspiracy:  "[a]cts

15  of officers consisted of discrimination & participation in community-wide conspiracy of

16  threatening & oppressing Sherman...."  (Compl. ¶ 10.)  Because there is no equal protection

17  claim, defendant argues that there can be no conspiracy to deny equal protection claim based on

18  the same facts.  Defendant has construed the conspiracy claim as pursuant to 42 U.S.C. § 1985

19  despite plaintiff's failure to cite any statute in connection with this claim.

20    A claim for conspiracy to violate constitutional rights must be stated under 42

21  U.S.C. §§ 1983 and 1985.  Section 1985 proscribes conspiracies to interfere with civil rights.

22  Sanchez v. City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1990); Karim-Panahi v. Los

23  Angeles Police Dept., 839 F.2d 621, 626 (9th Cir. 1988).  As construed by the United States

24  Supreme Court, it protects only against discrimination founded upon invidious, class-based

25  animus, such as race or religion.  United Bhd. of Carpenters and Joiners Local v. Scott, 463 U.S.

26  825, 103 S. Ct. 3352 (1983); see Ramirez v. City of Reno, 925 F. Supp. 681, 689 (D.Nev. 1996);

1   see also, De La Vruz v. Tormey, 582 F.2d 45, 49-50 (9th Cir. 1978) (invidious discrimination

2   improperly distinquishes among persons by reference to criteria such as race, sex, religion or

3   ancestry).

4          For the same reasons that plaintiff has failed to state a claim for equal protection

5   violations as set forth in the previous section, he has also failed to state a claim for conspiracy.

6   These claims should be dismissed with leave to amend.

7                    6.  Monell Liability

8          Defendant asserts that plaintiff has failed to allege a cognizable claim of

9   deprivation of any constitutional right, and that even if he could assert such a claim, he has not

10  alleged that any action by law enforcement was pursuant to the City's policy or custom.

11         Since there is no respondeat superior liability under § 1983, counties and

12  municipalities may be sued under § 1983 only upon a showing that an official policy or custom

13  caused the constitutional tort.  See Mt Healthy City School Dist Board of Education v. Doyle,

14  429 U.S. 274, 280 (1977); Monell v. New York City Dep't of Social Services, 436 U.S. 658, 691

15  (1978).  "A local government entity cannot be held liable under § 1983 unless the plaintiff

16  alleges that the action inflicting injury flowed from either an explicitly adopted or a tacitly

17  authorized [governmental] policy."  Ortez v. Washington Cty., State of Or., 88 F.3d 804, 811

18  (9th Cir.1996) (citation and quotations omitted) (alteration in original) "[L]ocal governments,

19  like any other § 1983 'person,' . . . may be sued for constitutional deprivations visited pursuant to

20  governmental 'custom' even though such a custom has not received formal approval through the

21  body's official decisionmaking channels."  Monell, 436 U.S. at 690-91.

22         A local governmental entity may also "be liable if it had a policy or custom of

23  failing to train its employees and that failure to train caused the constitutional violation.  In

24  particular . . . the inadequate training of police officers could be characterized as the cause of the

25  constitutional tort if – and only if – the failure to train amounted to 'deliberate indifference' to

26  the rights of persons with whom the police come into contact."  Collins v. City of Harker

13

1  Heights, 503 U.S. 115, 123-124, 112 S. Ct. 1061 (1992) (fn. omitted), citing in Canton v. Harris,

2  489 U.S. 378, 387, 388, 109 S.Ct. 1197 (1989).

3        Plaintiff only alleges a community wide conspiracy, (Compl. ¶¶ 9-15, 20-22); he

4  does not allege a City of Davis policy in the complaint.  In this regard, the typical allegation is

5  that : "[a]cts of officers consisted of discrimination & participation in community-wide

6  conspiracy of threatening & oppressing Sherman unjustly in attempt to further the goals of

7  conspirators to oppress him to the point of causing him to "crack," lose control, & violently

8  attack someone, after which they could accuse him of a serious crime & destroy his future...."

9  (Compl., ¶ 10.)   Elsewhere, the complaint states only that based on "years of previous acts of

10  unreasonable seizures committed by Davis Police against him, Sherman took this to be a credible

11  threat of seizure." (Id. at ¶ 20.)  In his opposition, plaintiff argues that his complaint proves that

12  the City of Davis had a custom of coercing citizens to seize him and arrest him without probable

13  cause.  He claims that the conspiracy in part was that officers only claimed they were acting on

14  behalf of citizens.  (MSJ at 7.)

15        The aforementioned examples constitute the sum total of facts regarding County

16  policy.  Pro se pleadings are liberally construed.  See Haines v. Kerner, 404 U.S. 519, 520-21, 92

17  S. Ct. 594, 595-96 (1972); Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988).

18  However, liberal construction cannot mean that the court must create facts in order for a claim to

19  be stated.  Plaintiff's allegation is a mere conclusion, and the detailed facts concerning plaintiff's

20  interactions with police do not serve to establish any County policy whatsoever.  All claims of

21  custom, policy or practice in Claims 1 through 7, 13 and 14 should be dismissed with leave to

22  amend.

23        III.  Vexatious Litigant and Posting Security

24        Defendant's motion to declare plaintiff vexatious and impose pre-filing

25  requirements, filed pursuant to 28 U.S.C. § 1651(a) and E.D. Local Rule 151(b), seeks to require

26  plaintiff to post a bond of $10,000 in order to proceed with the instant action, in addition to

1 requiring him to submit a declaration meeting specific requirements when he seeks to commence

2 a future action which contains certain claims, subject to leave of court.  As defendant's motion is

3 unopposed, it has been considered in conjunction with the record before the court, as well as

4 previous filings by plaintiff in this district.

5          The undersigned finds that the motion should be denied without prejudice as

6 premature, however, for two reasons.  First, defendant's request for a vexatious litigant order

7 with any new actions being subject to pre-filing requirements, is premature because this case has

8 not proceeded to a conclusion adverse to plaintiff.

9          Secondly, with respect to the posting of a bond before further prosecution of this

10 action take place, the court cannot make the determination that there is no reasonable probability

11 that plaintiff will prevail in this case.

12          Several sources authorize the court to order a plaintiff to post security.  The court

13 has inherent authority to require that security be posted.  Simunet East Associates v. Ramada

14 Hotel Operating Company,   37 F.3d 573, 574 (9th Cir. 1994); In re Merrill Lynch Relocation

15 Management, Inc., 812 F.2d 1116, 1121 (9th Cir. 1987).  Additionally, "[w]hile no federal statute

16 authorizes security for costs, the District Courts may make their own rules not inconsistent with

17 the Federal Rules of Civil Procedure."  Russell v. Cunningham, 233 F.2d 806, 811 (9th Cir.

18 1956) (citing Fed. R. Civ. P. 83).  See also Charles A. Wright & Arthur R. Miller, Federal

19 Practice and Procedure § 1025 (2002).  Local Rule 151(b) permits the court at any time, on its

20 own motion or that of a party, to order a party to give security, bond, or undertaking in such

21 amount as the Court may at any time determine to be appropriate.  Finally, this Circuit has

22 acknowledged the "inherent power of federal courts to regulate the activities of abusive litigants

23 by imposing carefully tailored restrictions under the appropriate circumstances."  De Long v.

24 Hennessey, 912 F.2d 1144, 1146 (9th Cir. 1990) (discussing requirements, pursuant to the All

25 Writs Act,  28 U.S.C. S 1651(a), for issuing an order requiring a litigant to seek permission from

26 the court prior to filing any future suits).

Local Rule 151(b) provides: "The provisions of Title 3A, part 2, of the California Code of Civil Procedure, relating to vexatious litigants, are hereby adopted as a procedural rule of this Court on the basis of which the Court may order the giving of security, bond, or undertaking, although the power of the court shall not be limited thereby." Cal. Code Civ. P., Title 3A, part 2, commences with § 391. Cal. Code Civ. P. § 391.1 requires a party to furnish security on a showing that (1) the party is a vexatious litigant, and (2) there is no reasonable probability that she will prevail in the instant litigation.[4] A vexatious litigant is, inter

---

[4] Cal Code Civ. Pro. § 391 provides:

As used in this title, the following terms have the following meanings:

a) "Litigation" means any civil action or proceeding, commenced, maintained or pending in any state or federal court.

(b) "Vexatious litigant" means a person who does any of the following:

(1) In the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person or (ii) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing.

(2) After a litigation has been finally determined against the person, repeatedly relitigates or attempts to relitigate, in propria persona, either (i) the validity of the determination against the same defendant or defendants as to whom the litigation was finally determined or (ii) the cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined.

(3) In any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay.

(4) Has previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence.

(c) "Security" means an undertaking to assure payment, to the party for whose benefit the undertaking is required to be furnished, of the party's reasonable expenses, including attorney's fees and not limited to taxable costs, incurred in or in connection with a litigation instituted, caused to be instituted, or maintained or caused to be maintained by a vexatious litigant.

(d) "Plaintiff" means the person who commences, institutes or

alia, a person acting pro per who repeatedly files unmeritorious motions, pleadings, or other

papers.

One purpose of authorizing security for costs is to allow the court to have some

control over the administration of a lawsuit.  See Ilro Productions, Ltd. v. Music Fair Enterprises,

---

> maintains a litigation or causes it to be commenced, instituted or
> maintained, including an attorney at law acting in propria persona.
> (e) "Defendant" means a person (including corporation,
> association, partnership and firm or governmental entity) against
> whom a litigation is brought or maintained or sought to be brought
> or maintained.

391.2. provides:
> At the hearing upon such motion the court shall consider such
> evidence, written or oral, by witnesses or affidavit, as may be
> material to the ground of the motion.  No determination made by
> the court in determining or ruling upon the motion shall be or be
> deemed to be a determination of any issue in the litigation or of the
> merits thereof.

391.3. provides:

> If, after hearing the evidence upon the motion, the court
> determines that the plaintiff is a vexatious litigant and that there is
> no reasonable probability that the plaintiff will prevail in the
> litigation against the moving defendant, the court shall order the
> plaintiff to furnish, for the benefit of the moving defendant,
> security in such amount and within such time as the court shall fix.

391.4. provides:

> When security that has been ordered furnished is not furnished as
> ordered, the litigation shall be dismissed as to the defendant for
> whose benefit it was ordered furnished.

391.6. provides:

> When a motion pursuant to Section 391.1 is filed prior to trial the
> litigation is stayed, and the moving defendant need not plead, until
> 10 days after the motion shall have been denied, or if granted,
> until 10 days after the required security has been furnished and the
> moving defendant given written notice thereof.  When a motion
> pursuant to Section 391.1 is made at any time thereafter, the
> litigation shall be stayed for such period after the denial of the
> motion or the furnishing of the required security as the court shall
> determine.

17

1   94 F.R.D. 76, 78 (S.D.N.Y.1982) (citing <u>Leighton v. Paramount Pictures Corp.</u>, 340 F.2d 859,

2   861 (2d Cir. 1965). In determining whether to impose a bond, the court may "take all the

3   pertinent circumstances into account including the conduct of the litigants and the background

4   and purpose of the litigation." <u>Leighton</u>, 340 F. 2d at 861.

5           In all, plaintiff has filed twenty-one previous cases in the Sacramento Division of

6   the Eastern District of California which qualify him for status as a vexatious litigant.[5] They are

7   numbers CIV.S. 02-0373 FCD DAD, CIV.S. 04-1310 LKK KJM, CIV.S. 04-2320 LKK EFB,

8   CIV.S. 05-1052 MCE DAD, CIV.S. 06-0016 GEB DAD, CIV.S. 06-0017 DFL GGH, CIV.S. 06-

9   0018 FCD CHS, CIV.S. 06-0911 JKS, CIV.S. 06-0931 FCD GGH, CIV.S. 06-0934 GEB KJM,

10  CIV.S. 06-1217 GEB GGH, CIV.S. 06-1345 MCE DAD, CIV.S. 06-2270 FCD DAD, CIV.S.

11  2415 ALK, CIV.S. 07-1645 MCE DAD, CIV.S. 07-2055 WBS CMK, CIV.S. 07-2260 TJH,

12  CIV.S. 10-03120 GEB JFM, CIV.S. 08-2842 GEB EFB, CIV.S. 11-1535 KJN, and CIV.S. 11-

13  1537 CKD.

14          A little more than half of the aforementioned cases were habeas petitions which

15  were decided adversely to plaintiff. In fact, in one of the previous habeas petitions, plaintiff

16  sought to overturn convictions for similar activity which he claims is protected in this case. That

17  petition was denied. <u>See</u> CIV.S. 06-0016 GEB DAD, findings and recommendations, filed

18  February 10, 2010 (failure to give jury instruction on First Amendment rights as a defense to

19  crime for which plaintiff convicted, obstructing or intimidating businesses and customers and

20  interfering with lawful business, not error). Further, in CIV.S. 11-1535 KJN, the court

21  recommended dismissal of a habeas petition for lack of jurisdiction because plaintiff had

22  completed his sentence seven months prior to filing the action and no collateral consequences

23  were present to show a restraint on plaintiff's physical liberty. The court in CIV.S. 07-2055

24  WBS CMK, also dismissed his habeas petition in part because he was not in custody when he

25

26          [5] Case number MISC. 04-0368 MCE DAD was later converted to CIV.S. 05-1052 MCE
    DAD, and will not be counted separately toward the total.

1  filed it.

2       Defendant cites to <u>People v. Harrison</u>, 92 Cal.App.4th 780, 787 (2001), for the

3  proposition that habeas corpus petitions may not be considered in making a vexatious litigant

4  determination; however, defendant argues that they may be considered under Local Rule 151,

5  and may also be considered here for purposes of a bond requirement.  <u>Harrison</u> concerned

6  potential consideration of previous criminal cases, not habeas cases, but a case cited by the

7  <u>Harrison</u> court directly addressed the question of whether habeas petitions would come within the

8  scope of prior cases considered for vexatious litigant determinations, and held that section 391

9  does not apply to habeas corpus proceedings.  <u>In re Bittaker</u>, 55 Cal.App.4th 1004, 1009-1012

10 (1997).  In any event, plaintiff has filed more than the requisite number of non-habeas cases, five

11 to be exact, in the past seven years to qualify as vexatious under California law.

12      Furthermore, many of the actions were filed and then later dismissed based on

13 plaintiff's failure to follow the rules of the court system or abandoning his cases.  <u>See</u> e.g. CIV.

14 S. 08-2842 GEB EFB (dismissed for failure to prosecute and failure to comply with federal and

15 local rules); CIV.S. 10-3120 GEB JFM (dismissed for failure to prosecute); CIV.S. 07-1645

16 MCE DAD (dismissed as successive petition with no appellate court order permitting it to

17 proceed); CIV.S. 06-2270 FCD DAD (dismissed as duplicative); CIV.S. 06-934 GEB KJM

18 (voluntary dismissal by plaintiff after straining court's resources for 18 months); CIV.S. 05-1052

19 MCE DAD (dismissed for failure to file amended complaint).

20      Of special note is one previously filed similar action containing many of the same

21 or similar claims that are alleged here, which was previously decided adversely to plaintiff.  This

22 case, numbered CIV.S. 04-2320 LKK EFB, was filed on November 2, 2004, against the City of

23 Davis.  The complaint alleged various claims under the Fourth, Sixth and Fourteenth

24 Amendments, and sought $40 million in damages.  Just as in this case, the complaint and

25 "addendum" alleged false arrest and threats of false arrest by the Davis Police Department on

26 various dates and locations in Davis.  Despite adverse findings that were affirmed on appeal,

plaintiff has once again attempted to raise many of the same and similar claims in this case.  <u>See</u> Findings and Recommendations, filed November 9, 2006, (dkt. no. 36), and February 26, 2008 (dkt. no. 105).  As defendant points out, plaintiff multiplied and abused the proceedings in that case by filing numerous frivolous pleadings, including multiple "addendums" to the complaint, (dkt. nos. 9, 15, 17, 26), motion to stay proceedings, (dkt. no. 23), followed by a contradictory motion to expedite proceedings, (dkt. no. 34), a motion in part "for court vigil[a]nce in spirit of justice," (dkt. no. 26), a motion to alter judgment (where no judgment had been entered), (dkt. no. 67), a motion to compel after discovery had closed, (dkt. no. 55), and an interlocutory appeal, (dkt. no. 66).  Additionally, plaintiff filed two motions for temporary restraining order, one of which was denied as frivolous, and one which was filed after judgment was entered, and denied. (Dkt. nos. 57 at 1, 114, 116, 119.)  The frivolousness of plaintiff's actions in litigation is clearly demonstrated by these filings, which caused that case to take almost three and a half years to resolve.

Of the twenty-one previous cases filed by plaintiff in this court, nineteen have either been dismissed by the court or resulted in a judgment adverse to plaintiff.  Plaintiff has not prevailed in any of the cases.  Defendant represents that the City of Davis has expended approximately $71,000 in defending all of the plaintiff's lawsuits.

As seen from a description of the claims in the present case, plaintiff has followed his now familiar pattern.  Clearly, plaintiff qualifies as a vexatious litigant under several of the alternative grounds for finding vexatiousness.  Plaintiff has brought and has had at least nineteen cases adversely decided in the past ten years; remaining open cases are in the process of being decided adversely to plaintiff; he repeatedly attempts to re-litigate the validity of past decisions and/or repeatedly litigates the same claims against the same or related defendants; he repeatedly files frivolous claims; he does not attempt to amend his complaints when given the opportunity. There seems to be no purpose in plaintiff's filings, and he obtains no relief, while causing immeasurable strain on the court system.

1    The second factor to be considered is whether there is any reasonable probability

2    that plaintiff will prevail in the instant litigation.  This determination cannot be made based on

3    the complaint on file at this time.  Although most of plaintiff's claims are currently subject to

4    dismissal based on legal authority, the claims remaining for which amendment is permitted are

5    not based on spurious legal theories, but must await further factual development.  For this reason,

6    a determination that there is no reasonable probability that plaintiff will prevail in this case

7    would be premature at present.

8    Accordingly, the court finds that an order imposing security for costs is not yet

9    appropriate.  Therefore, defendant's motion is denied without prejudice to its later renewal at an

10    appropriate time in this litigation, should it become clear that there is no reasonable probability

11    that plaintiff will prevail.

12    IV.  Plaintiff's Motion for Supplemental Pleading

13    By his motion, filed February 8, 2012, plaintiff seeks to add claims for incidents

14    occurring subsequent to the filing of the original complaint.  Because this opinion permits the

15    filing of an amended complaint, should these findings and recommendations be adopted, plaintiff

16    should be permitted to add the claims described in his motion for supplemental pleading, so long

17    as they adhere to the legal pleading requirements set forth herein.  Plaintiff is reminded that he

18    may be subject to Fed. R. Civ. P. 11 sanctions for baseless filings.

19    CONCLUSION

20    Accordingly, IT IS ORDERED that: defendant's motion  to declare plaintiff a

21    vexatious litigant and impose pre-filing requirements, filed November 10, 2011, (dkt. no. 11), is

22    denied without prejudice.

23    For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

24    1.  Defendant's motion to dismiss, filed September 12, 2011, (dkt. no. 7), be

25    granted as set forth in this opinion;

26    2.  Plaintiff's complaint be dismissed with leave to amend; and

1           3.  Plaintiff's motion for supplemental pleading, filed February 8, 2012, (dkt. no.

2  19), be granted.

3           These findings and recommendations are submitted to the United States District

4  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

5  fourteen (14) days after being served with these findings and recommendations, any party may

6  file written objections with the court and serve a copy on all parties.  Such a document should be

7  captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the

8  objections shall be served and filed within fourteen (14) days after service of the objections.  The

9  parties are advised that failure to file objections within the specified time may waive the right to

10  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

11  DATED: March 5, 2012

12                       /s/ Gregory G. Hollows

                  UNITED STATES MAGISTRATE JUDGE

13

GGH:076/Sherman0820.mtd.wpd

14

15

16

17

18

19

20

21

22

23

24

25

26